1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  Otter Products, LLC, a        )   CV 13-4384 RSWL (AGRx)
    Colorado Limited Liability    )
12  Company,                      )
                                  )   **ORDER Re: Plaintiff's**
13                                )   **Motion for Default**
                                  )   **Judgment Against**
                    Plaintiff,    )   **Defendant Angel Luis**
14                                )   **Berrios, Jr. [22]**
                                  )
15          v.                    )
                                  )
16                                )
    Angel Luis Berrios, Jr., an   )
17  Individual,                   )
                                  )
18                                )
                    Defendants.   )
19  _____)

20      On August 23, 2013, Plaintiff Otter Products, LLC

21  ("Plaintiff") filed the present Motion for Default

22  Judgment [22].  The Court, having reviewed all papers

23  submitted pertaining to this Motion and having

24  considered all arguments presented to the Court, **NOW**

25  **FINDS AND RULES AS FOLLOWS:**

26      Plaintiff's Motion for Default Judgment is hereby

27  **GRANTED.**

28  //

                              1

# I. Background

Plaintiff is a leading retailer and distributor of high quality protective cases, peripherals, and accessories for portable electronic devices and computers.  Compl. ¶ 13.  Plaintiff develops and manufactures these cases for a wide range of devices and products.  Id. at ¶ 14.  In particular, Plaintiff claims that its OTTERBOX® branded products have received extensive media coverage and achieved an extraordinary reputation.  Id. at ¶ 16.  Moreover, Plaintiff has received local and national accolades for its products, such as being named "The Best Mobile Case Brand" in 2011 by About.com Reader's Choice.  Id. at ¶ 17.

Plaintiff is the exclusive owner of six trademarks for its OTTERBOX® and DEFENDER SERIES® branded products and product packaging (the "Marks").  Id. at ¶¶ 19-21; see Garibyan Decl. ¶ 2, Exs. A-F.  Plaintiff claims that it has spent substantial time, money, and effort in developing consumer recognition and awareness of its marks and has spent an enormous amount of money on print and internet advertising to inform customers of the benefits of its products.  Compl. ¶ 18.

Plaintiff claims that at some point, without the Plaintiff's consent, Defendant Angel Luis Berrios, Jr. ("Defendant") began offering for sale and selling goods that were neither made by or consented to by Plaintiff using reproductions, counterfeits, copies, and

colorable imitations of one or more of Plaintiff's marks.  Id. at ¶ 24.  Plaintiff claims that Defendant maintains and operates a storefront on eBay under the username "wirelessexpressions."  Id. at ¶ 25.  Through this storefront, Defendant regularly advertised and sold products bearing the Marks.  Garibyan Decl. ¶ 4, Ex. G.

On April 10, 2012, in its ongoing investigation of counterfeit sales of OTTERBOX® branded products, Plaintiff purchased an "IPHONE 4 4S 4G OTTERBOX DEFENDER CASE COVER + HOLSTER BELT CLIP WHITE NEW IN BOX" (Item #220998879310) from Defendant for $19.95, paid through Plaintiff's PayPal account.  Compl. ¶ 27, Ex. G.  According to Plaintiff, the package arrived bearing a shipping label identifying Defendant's home address, 13536 Lakes Way, Orlando, Florida 32828.  Garibyan Decl. ¶¶ 3, 7, Ex. O.  The product purchased from Defendant clearly displayed marks identical to the Marks.  Garibyan Decl. ¶ 8, Ex. P.  Plaintiff confirmed that the item Defendant sold to Plaintiff was a counterfeit after inspecting the item using security measures.  Compl. ¶ 28; Garibyan Decl. ¶ 9.

On May 28, 2012, Plaintiff sent Defendant a cease and desist letter along with a draft complaint to the e-mail address identified on the PayPal purchase receipt; Defendant failed to respond.  Garibyan Decl. ¶ 10, Ex. Q.  On May 30, 2012, Plaintiff sent a second cease and desist letter to Defendant at his home

address via certified mail; Defendant received and
signed for the correspondence.  Garibyan Decl. ¶ 11,
Ex. R.  On May 7, 2013, U.S. Customs and Border
Protection seized a shipment of 300 counterfeit
OTTERBOX® branded products en route from China to
Defendant's home address for Defendant's resale.
Garibyan Decl. ¶ 13, Ex. S.

Plaintiff filed its Complaint against Defendant on
June 18, 2013, and Defendant was personally served,
with a copy of the Summons and Complaint on June 27,
2013, at his home address.  Garibyan Decl. ¶ 14; Dkt.
#18.  Defendant failed to respond to Plaintiff's
Complaint.  Garibyan Decl. ¶ 14.

Plaintiff requested entry of default against
Defendant on August 8, 2013, and the Clerk of the Court
entered default on Defendant on August 9, 2013.
Garibyan Decl. ¶ 15, Dkts. ##19-20.  Plaintiff filed
the present Motion for Default Judgment against
Defendant on August 23, 2013 [22].

## II.  Discussion

As a matter of initial concern, the Court finds
that it has proper subject matter and personal
jurisdiction in this case.  Pursuant to 28 U.S.C. §§
1331 and 1338, the Court has subject matter
jurisdiction because this Action was brought, in part,
under the Lanham Act.  Personal jurisdiction arises
from Defendant's commercial activities within
California.

**A.    Procedural Requirements for Default Judgment**

     The Court finds that Plaintiff has met all local procedural requirements for default judgment.  First, default was entered by the Clerk of the Court against Defendant on August 8, 2013 [20].  Second, default was entered as to the Complaint filed in this proceeding. Third, Defendant is not an infant or an incompetent person.  Garibyan Decl. ¶ 16.  Fourth, Defendant is not in the military service of the United States of America.  Id.  Fifth, Plaintiff has attached proof of service to its Motion stating that notice of the Motion has been served [22].

     Thus, the Court finds that the procedural requirements of Local Rule 55-1 (a-e) are met in this case.

**B.    Substantive Requirements for Default Judgment**

     For the reasons set forth below, the Court finds that Plaintiff has met the substantive requirements for a default judgment as set forth by Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

     1.    Possibility of Prejudice to Plaintiff

     The first factor in granting default judgment looks at the possibility of prejudice to the plaintiff if default judgment were not entered.  See Eitel, 782 F.2d at 1471-72.  Here, this factor weighs in favor of Plaintiff as Defendant has failed to appear.  If default is not entered, Plaintiff cannot be compensated for its losses.  Furthermore, without injunctive

relief, Plaintiff will continue to suffer harm from Defendant's violation of Plaintiff's trademark rights. Prejudice has been found in analogous situations. <u>See e.g.</u> <u>Sennheiser Elec. Corp. v. Eichler</u>, No. CV 12-10809 MMM (PLAx), 2013 U.S. Dist. LEXIS 105319 at *8 (C.D. Cal. July 19, 2013) (finding prejudice where plaintiff alleged that defendants infringed on its trademark name by selling counterfeit products bearing trademark name through their online storefronts).  As such, the Court finds that this factor weighs in favor of granting default judgment.

  2.  <u>Merits of Plaintiff's Case and Sufficiency of</u>
      <u>Plaintiff's Complaint</u>

The second and third factors concern the merits of Plaintiff's case and the sufficiency of Plaintiff's complaint. <u>Eitel</u>, 782 F.2d at 1471.  Courts commonly analyze these two factors together, as this Court does as well. <u>F.D.I.C. v. Quest, F.S., Inc.,</u> SACV 10-0710-DOC(RNBx), 2011 U.S. Dist. LEXIS 69210, at *6 (C.D. Cal. June 27, 2011).

Plaintiff has alleged five causes of action in its Complaint against Defendant: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) False Designation of Origin under 15 U.S.C. § 1125(a); (3) Trademark Dilution under 15 U.S.C. § 1125(c); (4) Unfair Competition under California Business & Professions Code § 17200 et seq.; (5) Declaratory Relief.  Compl. ¶¶ 35-58.

//

a.   *Plaintiff's Trademark Infringement, False*
*Designation of Origin, and Unfair*
*Competition Claims*

A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114. <u>Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1047 n.6 (9th Cir. 1999). Additionally, actions pursuant to California Business & Professions Code § 17200 are "substantially congruent" to claims made under the Lanham Act. <u>Cleary v. News Corp.</u>, 30 F.3d 1255, 1263 (9th Cir. 1994).  In other words, the Court should analyze Plaintiff's trademark infringement, false designation of origin, and unfair competition claims together.

To prove a claim of trademark infringement, a plaintiff must show that: (1) it has a valid, protectable trademark and (2) that Defendant's use of the mark is likely to cause confusion.  <u>Applied Info. Scis. Corp. v. eBay, Inc.</u>, 511 F.3d 966, 970 (9th Cir. 2007).

"Registration of a mark 'on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services, specified in the registration.'" <u>Id.</u> (quoting <u>Brookfield</u>, 174 F.3d at 1047).  Because Plaintiff alleges that it owns federal

1   registration of the Marks in its Complaint (and because

2   Plaintiff attached the registrations to the Complaint),

3   Plaintiff has adequately shown the validity of the

4   Marks and its ownership of the Marks.

5      Courts typically apply the eight factors set out in

6   AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir.

7   1979) to determine whether a defendant's use of a mark

8   or name creates a likelihood of confusion.  See Rearden

9   LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1199 (9th

10  Cir. 2012); Lahoti v. Vericheck, Inc., 636 F.3d 501,

11  507 (9th Cir. 2011).  Those factors are: (1) the

12  strength of the mark; (2) the proximity of the goods;

13  (3) the similarity of the marks; (4) evidence of actual

14  confusion; (5) marketing channels used; (6) type of

15  goods and the degree of care likely to be exercised by

16  the purchaser; (7) defendant's intent in selecting its

17  mark; and (8) likelihood of expansion into other

18  markets.  Sleekcraft, 599 F.2d at 348.

19              i.   *Strength of the Mark*

20     The first Sleekcraft factor looks at the strength

21  of the mark.  "Trademark law offers greater protection

22  to marks that are 'strong,' i.e., distinctive."  E. &

23  J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280,

24  1291 (9th Cir. 1992).  "Arbitrary and fanciful marks

25  have no intrinsic connection to the product with which

26  the mark is used; the former consists of words commonly

27  used in the English language, whereas the latter are

28  wholly made-up terms."  Brookfield, 174 F.3d at 1058

n.19 (citations omitted).  Additionally, "[m]arks may
be strengthened by extensive advertising, length of
time in business, public recognition, and uniqueness."
Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175,
1179 (9th Cir. 1988).

     The Court finds that the Marks here are strong.
Other than being associated with the products at issue,
the word "OTTERBOX" and the pictographic marks stemming
therefrom do not connote anything of meaning.
Moreover, Plaintiff has been using the Marks in
commerce since 2007.  Compl. ¶¶ 19-21, Exs. A-F.
Plaintiff's products have achieved an extraordinary
reputation and have been recognized both locally and
nationally, winning many awards in the process.  Id. at
¶¶ 16-17.  Plaintiff has coupled this public
recognition with extensive advertising, investing
substantial time, money, and effort in developing
consumer recognition and awareness of its marks.  Id.
at ¶ 18.  The Court thus finds that the Marks are
strong, thereby weighing toward a finding of a
likelihood of confusion.

               ii.  *Proximity or Relatedness of Goods*

     The second Sleekcraft factor looks to the proximity
or relatedness of the goods on which the mark is used.
"Where goods are related or complementary, the danger
of consumer confusion is heightened."  Gallo Cattle,
967 F.2d at 1291.  Here, both Plaintiff's and
Defendant's products are form-fit protective cases for

cellular phones.   Both Plaintiff's and Defendant's
products bear the Marks.   Garibyan Decl. ¶ 8, Ex. P.
As both Plaintiff's and Defendant's products are
identical, the Court finds that this factor weighs
heavily in favor of a finding of likelihood of
confusion.

       iii. *Similarity of the Marks*

  The third <u>Sleekcraft</u> factor looks to the similarity
of the marks.   "Three general principles help determine
whether marks are similar.   First, '[s]imilarity is
best adjudged by appearance, sound, and meaning.'
Second, the 'marks must be considered in their entirety
and as they appear in the marketplace.'   Third,
'similarities are weighed more heavily than
differences.'"   <u>Fortune Dynamic, Inc. v. Victoria's
Secret Stores Brand Mgmt.</u>, 618 F.3d 1025, 1032 (9th
Cir. 2010) (citations omitted).

  The Court finds that the marks on Defendant's goods
are highly similar to Plaintiff's Marks.   The
photographs Plaintiff submitted show that Defendant's
goods use the Marks in an identical manner on
practically identical goods to Plaintiff's products.
As such, the Court finds that the marks are similar and
that this factor weighs toward a finding that
Defendant's use of the Marks is likely to cause
confusion.

       iv.  *Evidence of Actual Confusion*

  The fourth <u>Sleekcraft</u> factor looks to evidence of

actual confusion.  While "[e]vidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely . . . failure to prove instances of actual confusion is not dispositive." Sleekcraft, 599 F.2d 352-53 (citing Plough, Inc. v. Kreis Labs., 314 F.2d 635, 639-40 (9th Cir. 1963); Drexel Enters., Inc. v. Hermitage Cabinet Shop, Inc., 266 F. Supp. 532, 537 (N.D. Cal. 1967)).

Here, Plaintiff has presented evidence of Defendant's sale of at least 4,100 counterfeit products.  Garibyan Decl. ¶ 5, Exs. H-M.  That so many consumers purchased Defendant's counterfeit products evidences actual consumer confusion.  As such, the Court finds that this factor weighs in Plaintiff's favor.

v.  *Marketing Channel Convergence*

The fifth Sleekcraft factor looks to whether the marketing channels used by Plaintiff and Defendant converge or are identical.  Plaintiff alleges that Defendant operates a storefront on eBay.com, an online marketplace, through which Defendant advertised, marketed, distributed, and sold products bearing the Marks.  Compl. ¶ 25; Garibyan Decl. ¶ 4, Ex. G. Plaintiff also alleges that it sells its products at third party retailers and online through its website. Garibyan Decl. ¶ 12.  Plaintiff thus contends that it and Defendant's marketing channels overlap because they both sell products over the Internet.  Mot. 13:3-8.

1    While this may be true, "[g]iven the broad use of

2 the Internet today . . . this factor merits little

3 weight." Playboy Enters. v. Netscape Commc'ns Corp.,

4 354 F.3d 1020, 1028 (9th Cir. 2004).

5    As such, this factor neither weighs in favor nor

6 against a finding of likelihood of confusion.

7                  vi. *Type of Good*

8    The sixth Sleekcraft factor examines whether the

9 good is one in which buyers are likely to exercise

10 greater care in their purchase.  "When goods are

11 expensive, it is assumed that buyers will exercise

12 greater care in their purchases." Gallo Cattle, 967

13 F.2d at 1293.  Conversely, "when dealing with

14 inexpensive products, customers are likely to exercise

15 less care, thus making confusion more likely."

16 Brookfield, 174 F.3d at 1060.

17    Here, Plaintiff alleges that the goods in question

18 are fairly inexpensive.  For example, Plaintiff

19 purchased one of Defendant's items for $19.95.

20 Garibyan Decl. ¶ 6.  Because the goods at issue are

21 relatively inexpensive, this factor weighs in favor of

22 finding a likelihood of confusion.

23                  vii. *Defendant's Intent*

24    The seventh Sleekcraft factor looks at the

25 defendant's intent in selecting the mark.  "When the

26 alleged infringer knowingly adopts a mark similar to

27 another's, [the court] must presume that the public

28 will be deceived." M2 Software, Inc. v. Madacy Entm't,

1  421 F.3d 1073, 1085 (9th Cir. 2005) (citing Sleekcraft,

2  599 F.2d at 354).

3      Plaintiff has alleged that Defendant intentionally

4  chose Plaintiff's Marks to confuse consumers and aid in

5  the promotion and sales of its unauthorized and

6  counterfeit products.  Compl. ¶ 29.  Defendant

7  continued to do this even after Plaintiff attempted to

8  contact Defendant prior to the instigation of the

9  instant lawsuit.  Garibyan Decl. ¶¶ 10-11, Exs. Q-R.

10 Defendant continued to engage in the sale of the

11 infringing goods even after notice of the lawsuit.  Id.

12 at ¶ 13-14, Ex. S.

13     Furthermore, the failure of a party to defend

14 itself against allegations of trademark counterfeiting

15 is indicative of willful trademark infringement.  See

16 Philip Morris U.S.A. Inc. v. Castworld Products, Inc.,

17 219 F.R.D. 494, 500 (C.D. Cal. 2003) (finding that a

18 party's failure to comply with the judicial process or

19 to participate in litigation indicates willful use of a

20 counterfeit mark).

21     Thus, the Court finds that Defendant knowingly

22 adopted marks similar to Plaintiff's Marks.  As such,

23 the Court finds that this factor weighs in favor of

24 finding a likelihood of confusion.

25              viii. *Expansion of Product Lines*

26     The eighth Sleekcraft factor concerns whether

27 Defendant will expand the product line to include other

28 products.  Plaintiff has not alleged any facts or

13

1  raised any arguments regarding this factor.  As such,
2  the Court finds that this factor is neutral.

3              ix.  *Conclusion*

4      Because all of the Sleekcraft factors either weigh
5  in favor of a finding of a likelihood of confusion or
6  are neutral, the Court finds that Defendant's use of
7  the marks was likely to cause confusion.

8      The Court thus finds that Plaintiff has adequately
9  alleged both elements necessary for a trademark
10 infringement claim.

11          b.  *Plaintiff's Trademark Dilution Claim*

12         "In order to prove a violation of the Federal
13         Trademark Dilution Act, a plaintiff must show
14         that (1) the mark is famous; (2) the defendant
15         is making a commercial use of the mark in
16         commerce; (3) the defendant's use began after
17         the mark became famous; and (4) the defendant's
18         use of the mark dilutes the quality of the mark
19         by diminishing the capacity of the mark to
20         identify and distinguish goods and services."

21 Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316,
22 1316, 3124 (9th Cir. 1998).

23              i.  *Famousness of Plaintiff's Marks*

24     The first element of a trademark dilution claim
25 requires the plaintiff to establish that the mark is
26 famous.  In determining whether a mark is famous,
27 courts may consider several factors, including: (1) the
28 degree of inherent or acquired distinctiveness; (2) the

14

duration and extent of use; (3) the duration and extent of advertising and publicity; (4) the geographical extent of the market; (5) the channels of trade; (6) the degree of recognition in the trading areas and channels of trade; (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark is registered. <u>Nissan Motor Co. v. Nissan Computer Corp.</u>, 378 F.3d 1002, 1013 (9th Cir. 2004) (citing 15 U.S.C. § 1125(c)(1)).

The Court finds that the Marks are famous under 15 U.S.C. § 1125(c)(1). Plaintiff's Mark is highly distinct; as discussed above, Plaintiff's OTTERBOX® Mark does not connote anything of meaning other than Plaintiff's products. Furthermore, Plaintiff has been using these Marks extensively since 2007. Compl. ¶¶ 19-21, Exs. A-F. Plaintiff has spent substantial time, money, and effort in advertising and publicity. <u>Id.</u> at ¶ 18. Additionally, Plaintiff's Marks and products are highly recognized both locally and nationally, indicating a national market. <u>Id.</u> at ¶ 17. Finally, the Marks are registered. <u>Id.</u> at ¶¶ 19-21, Exs. A-F. As nearly all of the statutory factors weigh in Plaintiff's favor, the Court finds that the Marks are famous.

ii. <em>Defendant's Commercial Use of Plaintiff's Famous Marks</em>

The Court finds that Defendant has made a commercial use of Plaintiff's Marks.

First, Defendant operates and maintains an eBay storefront under the name "wirelessexpressions," through which he regularly and systematically advertised, marketed, distributed, and sold products bearing unauthorized Plaintiff's Marks.  Compl. ¶¶ 24-34; Garbiyan Decl. ¶ 4-13, Ex. G-S.  In other words, Defendant routinely uses Plaintiff's Marks to market and sell its products.

Second, on April 10, 2012, Plaintiff purchased an "IPHONE 4 4S 4G OTTERBOX DEFENDER CASE COVER + HOLSTER BELT CLIP WHITE NEW IN BOX" (Item #220998879310) from Defendant for $19.95, paid through Plaintiff's PayPal account.  Compl. ¶ 27, Ex. G.  The product purchased from Defendant was inspected for authenticity and determined to be a counterfeit.  Compl. ¶ 28; Garibyan Decl. ¶¶ 8-9, Ex. P.

Given Defendant's extensive marketing and sales of his counterfeit products using Plaintiff's Marks, the Court finds that Defendant has made commercial use of Plaintiff's Marks.

iii. <em>Defendant's Use Began After Plaintiff's Marks Were Famous</em>

Plaintiff has been using the Marks since as early as 2007.  Compl. ¶¶ 19-21, Exs. A-F; Garibyan Decl. ¶ 2, Exs. A-F.  Defendant has, according to Plaintiff's monitoring software, sold counterfeit "OTTERBOX" products from August 2011 to March 2013 through his "wirelessexpressions" eBay storefront.  Garibyan Decl.

¶ 5, Ex. H-M.  Accordingly, the Court finds that
Defendant used the Marks after they became famous.

> iv.  *Defendant's Use Tarnishes the Quality*
> *of Plaintiff's Marks*

The final element for a trademark dilution claim is
that Defendant's use of the Marks has tarnished the
quality of Plaintiff's Marks.  "Tarnishment occurs
'when a famous mark is improperly associated with an
inferior or offensive product or service.'" Playboy
Enters., 354 F.3d at 1033 (quoting Panavision, 141 F.3d
at 1326 n.7).

Defendant has associated Plaintiff's Marks with
counterfeit versions of Plaintiff's products by selling
counterfeits bearing the Marks.  Compl. ¶¶ 22-34, 45-
50; Garibyan Decl. ¶¶ 4-14, Exs. G-S.  As such, the
Court finds that Defendant tarnished Plaintiff's Marks.

> c. *Conclusion*

The Court thus finds that Plaintiff has adequately
alleged the elements necessary for a trademark dilution
claim.  Because Plaintiff has adequately pled and
established all the elements and factors necessary for
its trademark infringement and trademark dilution
claims, the Court finds that the second and third Eitel
factors weigh in favor of granting default judgment.

> 3.  Sum of Money At Stake

The fourth factor in granting default judgment
looks at the amount of money at stake in the action.
See Eitel, 782 F.2d at 1471-72.

The Lanham Act, 15 U.S.C. § 1117(c), authorizes statutory damages of up to "$2,000,000 per counterfeit mark per type of good or services sold, offered for sale, or distributed" where "the use of the counterfeit mark was willful".  15 U.S.C. § 1117(c)(2).  A "counterfeit mark" is "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services."  15 U.S.C. § 1116(d)(1)(B)(i).

Plaintiff seeks statutory damages in the amount of $4,000,000 for willful trademark infringement and trademark dilution pursuant to 15 U.S.C. § 1117(c)(1) for Defendant's intentional infringement of Plaintiff's Marks.  Mot. 20:15-18.

Plaintiff has alleged that Defendant has sold thousands of counterfeit versions of Plaintiff's products bearing the Marks for hundreds of thousands of dollars.  Garibyan Decl. ¶ 5, Exs. H-M.  Given that Plaintiff's Marks were registered for the duration of Defendant's activities, these facts indicate that Defendant has knowingly, willfully, and intentionally used counterfeit marks.  As such, pursuant to 15 U.S.C. § 1117(c)(1), this Court finds that Plaintiff is authorized to seek statutory damages of up to $12,000,000.

The significant amount of money at stake here outweighs the egregiousness of Defendant's conduct, weighing against awarding default judgment.

4.   <u>Possibility of Dispute Over Material Facts</u>

The fifth factor in granting default judgment looks at whether there is a possibility of dispute concerning material facts.   <u>Eitel</u>, 782 F.2d at 1471-72.

There is nothing to suggest the possibility of a dispute over material facts here because Defendant has not filed a responsive pleading to the Complaint. Furthermore, where a plaintiff has filed a well-pled complaint, the possibility of a dispute concerning material facts is remote.   <u>Landstar Ranger, Inc. v. Parth Enters., Inc.</u>, 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010).   Thus, this factor weighs toward granting default judgment.

5.   <u>Whether Default Due to Excusable Neglect</u>

The sixth factor in granting default judgment looks at whether default was due to some excusable neglect. <u>Eitel</u>, 782 F.2d at 1472.

Here, there is no evidence that default was due to Defendant's excusable neglect.   Defendant was personally served with a copy of the Summons and Complaint on June 27, 2013 [18].   Garibyan Decl. ¶ 14. Defendant did not file an answer.   Furthermore, Plaintiff filed this Motion for Default Judgment on August 23, 2013 and served notice of the Motion that same day [23].   Defendant has not appeared or filed a responsive pleading.   As such, the Court finds that this factor weighs toward granting default judgment.
//

6.   <u>Strong Policy Favoring Decision on Merits</u>

The seventh and last factor in granting default judgment considers the strong policy underlying the Federal Rules of Civil Procedure favoring decisions  on the merits.  <u>Eitel</u>, 782 F.2d at 1472.  However, the preference of deciding a case upon its merits is not alone dispositive, given the existence of Federal Rule of Civil Procedure 55(b).  <u>PepsiCo, Inc. v. California Security Cans.</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  In addition, a defendant's failure to answer a plaintiff's complaint "makes a decision on the merits impractical, if not impossible."  <u>Id.</u>; <u>Elektra Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal. 2005).  Here, Plaintiff's federal trademark claims are unopposed and Defendant has failed to appear in this Action.  Therefore, this factor favors granting default judgment.

Accordingly, because Plaintiff meets both the substantive and procedural requirements, the Court **GRANTS** Plaintiff's Application for Default Judgment.

**C.**   **<u>Terms of the Judgment</u>**

After determining that entry of default judgment is warranted, the Court must next determine the terms of the judgment.

1.   <u>Statutory Damages</u>

Plaintiff seeks $4,000,000 in statutory damages for Defendant's federal trademark violations as compensation for Plaintiff's damages, as a punishment

20

for Defendant's willful conduct, and as a deterrent to
future infringement by Defendant and other
counterfeiters.  Mot. 21:26-28.

"Several courts have found statutory damages are
appropriate in default judgment cases because the
information needed to prove actual damages is within
the infringers' control and is not disclosed."
Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1238
(E.D. Cal 2008).  Pursuant to the Lanham Act, a
plaintiff may recover statutory damages "not less than
$1,000 or more than $200,000 per counterfeit mark per
type of goods or services sold, offered for sale, or
distributed, as the court considers just."  15 U.S.C. §
1117(c)(1).  Additionally, where a defendant's conduct
is willful, a court may grant enhanced statutory
damages for "not more than $2,000,000 per counterfeit
mark per type of goods or services sold, offered for
sale, or distributed, as the court considers just."  15
U.S.C. § 1117(c)(2).  Willfulness requires a connection
between the defendant's awareness of its competitors
and the defendant's actions at those competitors'
expense.  See Louis Vuitton Malletier, S.A. v. Akanoc
Solutions, Inc., 658 F.3d 936, 944 (9th Cir. 2011);
Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400,
1406 (9th Cir. 1993).  However, willfulness can be
inferred from a defendant's failure to defend.
Castworld Products, 219 F.R.D. at 501.  Moreover, in
determining whether the amount of statutory damages

1    sought is reasonable, courts will look to see if the

2    amount is calculated to serve the purposes of awarding

3    statutory damages, such as compensating lost profits,

4    punishing willful infringing conduct, and deterring

5    infringing activity.  See id. at 501-02.

6        Courts tasked with determining statutory damages

7    awards under the Lanham Act often turn to the analysis

8    developed for a similar provision within the Copyright

9    Act.  Phillip Morris USA Inc. v. Shalabi, 352 F. Supp.

10   2d 1067, 1076 (C.D. Cal. 2004); Sara Lee Corp. v. Bags

11   of New York, Inc., 36 F. Supp. 2d 161, 166-167

12   (S.D.N.Y. 1999).  Based on the factors considered for

13   the award of statutory damages under the Copyright Act,

14   some courts applying the Lanham Act have looked to

15   estimates of actual damages when making statutory

16   damages awards, requiring a "plausible relationship"

17   between plaintiff's actual damages and the requested

18   statutory damages award.  See Adobe Sys v. Tilley, No.

19   C-09-01085 PJH (JCS), 2009 U.S. Dist. LEXIS 123438, at

20   *12 (N.D. Cal. Dec. 23, 2009); see also Sara Lee, 352

21   F. Supp. 2d at 170.

22       Defendant's unwillingness to participate in the

23   legal process in spite of his knowledge of the suit, as

24   well as his significant infringing activity indicates

25   that his infringement was willful.  Plaintiff is thus

26   entitled to up to $12,000,000 in statutory damages

27   pursuant to 15 U.S.C. § 1117(c) given that Defendant

28   has willfully infringed on Plaintiff's six Marks.

However, the Court hereby finds that Plaintiff's requested $4,000,000 is unreasonable as it is not "plausibly related" to Plaintiff's actual damages. Plaintiff provides evidence that it has been damaged in the amount of its lost profits, though the total amount cannot be ascertained.  See Garibyan Decl. ¶ 5, Exs. H-M.  In particular, Plaintiff provides tracking data for Defendant's "wirelessexpressions" eBay storefront showing that from August 2011 through March 2013, Defendant sold no less than 4,101 counterfeit OTTERBOX® products with gross receipts of no less than $88,812.00.  Id.  Defendant's infringing activity, then, is extensive and pervasive, continuing even after notice of this Action.  See id. at ¶ 6, 10-11. However, an award of $4,000,000 here would go beyond deterring future infringement and would serve as a windfall for Plaintiff.  See Adobe Systems, Inc. v. Tilley, No. C 09-1085 PJH, 2010 WL 309249 at *5-6 (N.D. Cal. Jan. 19, 2010) ("while the plaintiff in a trademark or copyright infringement case is entitled to damages that will serve as a deterrent, it is not entitled a windfall.").

The Court has significant discretion to determine the amount of damages to be awarded.  See Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704, 712 (9th Cir. 1999); Moroccanoil, Inc. v. Allstate Beauty Prods., Inc., 847 F. Supp. 2d 1197, 1202 (C.D. Cal. 2012). Courts have been predictably varied in their damages

awards for similar default judgments involving
trademark counterfeiting.  See E.I. Du Pont de Nemours
and Co. v. Drabek, No. CV 12-10574 DDP AJWX, 2013 WL
4033630, at *7 (C.D. Cal. May 3, 2013) (awarding
$25,000 per product bearing plaintiff's mark for a
total of $525,000 where plaintiff failed to present
evidence regarding the extent of sales and evidence
that defendant sold infringing products to a wide
market); Sweet People Apparel, Inc. v. Zipper Clothing,
No. CV 12-02759-ODW (CWx), 2012 WL 1952842 at *4-5
(C.D. Cal. May 31, 2012) (awarding plaintiff $150,000
in statutory damages per infringed mark where
plaintiffs alleged that their jeans retailed for about
$100 and that sales of the jeans totaled tens of
millions of dollars); Beachbody, LLC v. Johannes, No.
CV 11-1148 PSG RZX, 2011 WL 3565226, at *3 (C.D. Cal.
Aug. 12, 2011) (rejecting plaintiff's request for
$2,150,000 in statutory damages and instead awarding
$35,000 per mark willfully infringed for a total of
$105,000 where plaintiff could only show sales of 132
allegedly infringing DVDs); Castworld Products, 219
F.R.D. at 501 (awarding $2,000,000 in statutory damages
where defendant imported 8,000,000 counterfeit
cigarettes with a street value of millions of dollars).
Given Defendant's serious infringing conduct and
Plaintiff's evidence that it has been damaged at least
in the amount of $88,812.00, the Court finds that
Plaintiff is entitled to $100,000 per willfully

24

infringed mark for a total of $600,000.  The Court
finds that such an award is reasonably calculated to
deter further illegal conduct and compensate Plaintiff
for any loss in reputation.

    2.  <u>Injunctive Relief</u>

    Plaintiff asks the Court to issue a permanent
injunction prohibiting Defendant from (1)
manufacturing, advertising, distributing, offering for
sale, selling, whether directly or indirectly,
counterfeit merchandise bearing Plaintiff's Marks,
including those bearing marks or names confusingly
similar to Plaintiff's Marks, (2) using Plaintiff's
Marks or any colorable imitation thereof on or in
connection with the promotion, advertising,
distribution, manufacture, or sale of Defendant's
goods, and (3) ordering Defendant to cancel, withdraw,
and recall all its promotions, advertisements, and
merchandise bearing Plaintiff's Marks or any
confusingly similar simulation to Plaintiff's Marks,
which have been published, placed, or shipped by
Defendant or under Defendant's authority.  Mot. 24:21-
25:12.  The Lanham Act gives courts the power to grant
reasonable injunctions when necessary to prevent
further violations of the statutes.  <u>See</u> 15 U.S.C. §
1116(a).  A plaintiff, however, is not automatically
entitled to an injunction simply because it proves its
affirmative claims.  <u>Pyrodyne Corp. v. Pyrotronics</u>
<u>Corp.</u>, 847 F.2d 1398, 1402 (9th Cir. 1988).

In order for a court to grant a permanent injunction, the plaintiff must show:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Regarding the first element, when a plaintiff establishes in a trademark infringement or unfair competition action a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable harm if an injunction is not granted. Abercrombie & Fitch Co. V. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007); Vision Sports, Inc., v. Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989). The Ninth Circuit has found that an analogous presumption for preliminary injunctions in the copyright infringement context has effectively been overturned in light of Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008) and eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006). See Flexible Lifeline Sys., Inc. V. Precision Lift, Inc.,

654 F.3d 989, 994-98 (9th Cir. 2011).  However, the
Ninth Circuit has yet to address the effect upon the
presumption of irreparable harm for permanent
injunctions in the trademark infringement context.
Accordingly, courts have continued to apply the
irreparable harm presumption in trademark infringement
cases for permanent injunctions, and this Court follows
suit.  See Choice Hotels Intern., Inc. v. Kusum Vali,
Inc., No. 11CV1277 BTM(WMc), 2012 WL 2838183, at *3
(S.D. Cal. July 9, 2012); T-Mobile USA, Inc. V. Terry,
862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012).  Here,
Plaintiff alleges that Defendant's use of the
counterfeit OTTERBOX® mark in their manufacture,
marketing, sale, and distribution of goods is likely to
cause confusion, mistake, and deception among the
general public.  Compl. ¶ 31.  Thus, the Court finds
that Plaintiff is entitled to a presumption of
irreparable harm.

However, even without the legal presumption
afforded it by law, Plaintiff maintains that it will be
irreparably harmed by Defendant's continued use and
infringement of Plaintiff's trademark.  Compl. ¶¶ 44,
49, 54.  Thus, Plaintiff has satisfied the first
element.

Plaintiff has also satisfied the second element
concerning inadequate legal remedy.  Plaintiff alleges
that unless enjoined, Defendant will continue to
infringe upon Plaintiff's trademark.  Id. ¶¶ 44, 49,

54. Defendant's failure to respond or otherwise appear in this Action does not assure that Defendant has stopped infringing.  See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting a permanent injunction as part of default judgment in part because "defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease").  Although an award of money damages may remedy Defendant's past wrongful acts, it will not adequately compensate for Defendant's future acts.  Thus, the second element is satisfied.

The third element requiring a balance of hardships favors Plaintiff because if the injunction does not issue, Defendant is more likely to continue violating Plaintiff's rights, imposing a hardship on Plaintiff.

Finally, the public interest will not be disserved by a permanent injunction.  To the contrary, if the injunction is not granted, continued infringement will discourage future innovative developments by failing to provide an adequate forum through which corporations, such as Plaintiff, may protect their ideas.  See Amini Innovation Corp. v KTY Intern. Marketing, 768 F. Supp. 2d 1049, 1057 (C.D. Cal. 2011).  Additionally, prohibiting Defendant from manufacturing, marketing, selling, and distributing counterfeit OTTERBOX® products will prevent the likelihood of future confusion to consumers.

Therefore, because Plaintiff has demonstrated the requisite facts necessary to satisfy the aforementioned four-part test, the Court **GRANTS** Plaintiff's request for a permanent injunction against Defendant: (1) enjoining and permanently restraining Defendant from manufacturing, advertising, distributing, offering for sale, or selling, whether directly or indirectly, counterfeit merchandise bearing Plaintiff's Marks, including any merchandise of any kind bearing Plaintiff's Marks or names that are confusingly similar to the trademarks, trade names, designs or logos of Plaintiff; (2) enjoining and permanently restraining Defendant from using Plaintiff's Marks or any copy, reproduction, or colorable imitation, or confusingly similar simulation of Plaintiff's Marks on or in connection with the promotion, advertising, distribution, manufacture, or sale of Defendant's goods; and (3) ordering Defendant to cancel, withdraw, and recall all its promotions, advertisements, and merchandise bearing Plaintiff's Marks or any confusingly similar simulation of Plaintiff's Marks, which have been published, placed, or shipped by Defendant or under Defendant's authority.

3. <u>Attorneys' Fees</u>

The Lanham Act permits attorneys' fees to be granted in "exceptional" cases in which the defendant's behavior has been malicious, fraudulent, deliberate, or willful. 15 U.S.C. § 1117(a)-(b); <u>Sealy, Inc. v. Easy</u>

1    Living, Inc., 743 F.2d 1378, 1384 (9th Cir. 1984).
2    Willful infringement can be inferred from a defendant's
3    failure to defend.  eAdGear, Inc. v. Liu, No. CV-11-
4    05398 JCS, 2012 WL 2367805, at *19 (N.D. Cal. June 21,
5    2012); Ringcentral, Inc. v. Quimby, 711 F. Supp. 2d
6    1048, 1065 (N.D. Cal. 2010) (citing Castworld Products,
7    219 F.R.D. at 500).

8        As Defendant has failed to defend this Action, his
9    willful infringement of Plaintiff's Marks can be
10   inferred.  Moreover, Plaintiff has alleged Defendant's
11   willful exploitation of Plaintiff's Marks multiple
12   times in its Complaint, further showing Defendant's
13   willful infringement.  See Compl. ¶¶ 25-26, 29.

14       According to Local Rule 55-3, the amount of
15   attorney's fees that a plaintiff may recover from a
16   default judgment hinges on the amount of judgment
17   awarded to the plaintiff, exclusive of costs.  Pursuant
18   to the Local Rule 55-3 schedule, Plaintiff is entitled
19   to $5,600 plus 2% of the damages award over $100,000,
20   or $15,600.  The Court thus awards Plaintiff $15,600 in
21   attorneys' fees.

22       4.  Costs
23       Plaintiff also requests costs under 15 U.S.C. §
24   1117(a) in the amount of $639.90.  Mot. 23:21-24.
25   Under the Lanham Act, a plaintiff that prevails on a
26   claim under 15 U.S.C. § 1125(a) or on a willful
27   violation under 15 U.S.C. § 1125(c) is entitled to
28   costs of the action.  See § 1117(a).  Here, Plaintiff

30

1  has prevailed on its claims under § 1125(a) and also
2  prevailed on a willful violation under § 1125(c).  As
3  such, the Court awards Plaintiff $639.90 in costs.

**IV. Conclusion**

5    The Court **GRANTS** Plaintiff's Motion for Default
6  Judgment and awards Plaintiff $600,000 in statutory
7  damages; $15,600 in attorney's fees; and $639.90 in
8  costs.   The Court also **GRANTS** Plaintiff's request for a
9  permanent injunction, the details of which to be
10 outlined in the Judgment.




13 **IT IS SO ORDERED.**
14 DATED: October 10, 2013


                              RONALD S.W. LEW
16                            _____
                              **HONORABLE RONALD S.W. LEW**
17                            Senior, U.S. District Court Judge